# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT L. TROTTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case number 4:03cv0317 CDP |
| | ) | TCM |
| DAVE DORMIRE and | ) | |
| JEREMIAH W. NIXON,[1] | ) | |
| | ) | |
| Respondents. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The 28 U.S.C. § 2254 petition of Robert L. Trotter ("Petitioner"), a Missouri prisoner

convicted of twelve felony counts, for federal habeas corpus relief is before the undersigned

United States Magistrate Judge for a review and a recommended disposition. <u>See</u> 28 U.S.C.

§ 636(b).

### <u>Background</u>

The presentation of evidence at Petitioner's jury trial on seven counts of first degree

assault and seven counts of armed criminal action lasted one day. (Resp. Ex. 1 at i-ii.)

Eight witnesses testified for the State, including Diane Davis and her three children, a

medical records custodian, a police officer, a former employer of Petitioner, and a

bystander. Petitioner was the only witness to testify in his behalf.

---

[1]Because Petitioner is challenging a sentence to be served in the future, the Attorney General
of Missouri, Jeremiah W. "Jay" Nixon, is hereby added as a proper party respondent. <u>See</u> Rule 2(b),
Rules Governing Section 2254 in the United States District Courts.

Davis was the first witness to testify. Petitioner called her the morning of July 18, 1997, to ask her to pick him up at work and drive him home. (Id. at 210.) She was then working at Cosey's Plumbing and Car Wash and could not leave. (Id. at 207, 210.) Marlon Keeton[2] also worked there. (Id. at 208.) Petitioner had worked there once for less than one month. (Id.) Petitioner continued to call that morning and threaten her. (Id. at 212-13.) He came to the business after lunch, and was screaming and yelling. (Id. at 214.) The owner, Louida Cosey, told Davis to remain behind a locked door and told Petitioner to leave. (Id. at 216.) As Petitioner left, he picked up a snow cone machine and tried to throw it through a window. (Id. at 218.) After he left, Davis heard tires screeching and wood cracking. (Id. at 220.) She later saw that the signs in front of the business were damaged. (Id.)

Later that evening, Davis, Keeton, and Davis' two sons, Corey and Brian, went to the baseball game. (Id. at 225.) Keeton drove them in his truck. (Id.) They left the game early because it was hot and Keeton was sick. (Id. at 227.) They stopped at an Amoco gas station at the corner of Olive Boulevard and Kingsland in University City. (Id.) Davis frequently went to the station, and had done so when she and Petitioner were dating. (Id. at 204.) Davis and her sons got out of the truck; Keeton did not. (Id. at 228.) Davis heard a motor, and recognized it as being that of Petitioner's car. (Id. at 229.) She saw Petitioner's car backing up and told her sons to get in the truck. (Id. at 230.) They jumped in the back of the truck. (Id. at 231.) Petitioner got out of his car, walked to the passenger

_____

[2]Marlon Keeton died of cancer several months before trial. (Resp. Ex. 1 at 191, 308.)

side of the truck, and mumbled something to her sons. (Id. at 232.) He then turned, walked back to his car, and rammed his car into the back of the truck. (Id. at 33.) Her sons flew in the air and back down. (Id. at 235.) Petitioner rammed the truck again. (Id. at 236.) Keeton drove off; Petitioner followed, with his tires squealing. (Id. at 237-238.)

Corey, six years old at the time of the incident, testified that when his mother told him to get into the truck there was no time to get into the cab. (Id. at 269.) Every time Petitioner rammed the truck he and Brian flew into the air. (Id. at 270.) Petitioner rammed the truck three times. (Id. at 271.) The last time, he and Brian flew out of the truck. (Id. at 270.) Brian, eleven years old at trial, testified that he and Corey flew out of the truck after Petitioner hit the truck as Keeton tried turning into an apartment complex. (Id. at 279.) Corey landed face down on the street; he landed face up. (Id.) On cross-examination, Brian also testified that Petitioner walked to the truck at the Amoco station and mumbled something before getting back into his car and ramming the truck. (Id. at 282.)

Alisha Phillips, Davis' daughter, was 20 years old and living with her mother on July 18. Petitioner telephoned the house that morning looking for her mother. (Id. at 293.) They had three-way calling so Alisha was able to connect him to Davis at work. (Id.) She heard him tell Davis that if she wanted to see him act crazy then she would. (Id. at 294.) Alisha later heard Petitioner tell someone else that Davis better hope the police got to her before he did. (Id. at 295.)

Louida Cosey, the owner of Cosey's Plumbing and Car Wash, testified that Petitioner came to her business that morning looking for Davis. When thwarted, he tried to throw a snow cone machine through a plexiglass window. (Id. at 300.) When restrained by her brothers, he left, went to his car, drove up on the sidewalk, and knocked down some boards. (Id.)

Shantel Butler was in her car at the intersection of Olive and Kingsland on July 18 when she heard tires squealing and saw a car hit the back of a pick-up truck at the corner Amoco lot. (Id. at 309-10.) She saw the truck take off and the car follow. (Id. at 311-12.) She also followed. (Id. at 312.) She was two to three car lengths behind the chasing car and saw kids bouncing around in the back of the truck. (Id. at 313.) The car hit the truck, the truck spun around and hit a pole, and the kids fell out. (Id. at 313-14.) The man in the car got out and tried to fight the man in the truck. (Id. at 314.) The man in the car also tried to kick one of the kids laying on the ground and said he was going to kill the "b****." (Id. at 315.) The man in the truck was gone. (Id. at 316.)

Oliver Orlando Jefferson was on duty as a University City police officer that night and was parked at a lot at the corner of Olive and Kingsland. (Id. at 323-24.) He heard a screeching noise and looked to see it coming from the Amoco lot. (Id. at 326.) He drove to the station and saw Davis. (Id. at 327.) He put Davis in his car and drove in the direction she indicated. (Id.) He soon saw a two-vehicle crash on Olive and two men fighting. (Id. at 327-28.) He separated the two, and one of the men, Petitioner, started fighting him. (Id. at 330.) Petitioner said, "F*** them kids and their mother. I'll kill 'em

all." (Id. at 332.)  Petitioner was placed in the back of the patrol car.  (Id. at 333.)  He started kicking the doors and was able to push the two rear doors outward from their frames.  (Id. at 334-35.)  Petitioner had been driving a 1976 Buick Electra 225, a big, heavy car.  (Id. at 337.)

Petitioner testified that he had to be back at a halfway house by a specific time on July 18 to be released.  (Id. at 353.)  He was also fighting a foreclosure on some property.  (Id. at 353.)  When he went to Davis' place of employment, he did pick up a tool that was part of the snow cone machine and threw it at a wall, not a window.  (Id. at 355.)  He then got in his car, which had been parked halfway on the sidewalk and halfway on the street, stepped on the gas, and drove off.  (Id.)  That evening, he saw Davis and Keeton at the Amoco station and was upset to see Davis with Keeton.  (Id. at 358.)  He accidentally hit the back of Keeton's truck with his car.  (Id.)  His glasses then came off.  (Id.)  Because of this, he did not see the children in the truck.  (Id.)  He did see Keeton's truck drive off and he chased him because he wanted to fight with Keeton.  (Id. at 359.)  He hit the truck to disable it.  (Id.)  He did not see Corey or Brian.  (Id. at 361.)  Earlier that day, he and his brother-in-law drank a pint of Seagram's Extra Dry and a twelve-pack.  (Id. at 356, 364, 386.)  He also smoked a marijuana joint, which he later discovered had had something else in it.  (Id. at 364-65.)  He agreed that his Buick was a heavy car and that he was "gonna do whatever needed to be done" and was in "no mood for talking."  (Id. at 385.)  He had two prior assault third degree convictions and a conviction for violating a restraining order.  (Id. at 375.)

The jury found him guilty of two counts of assault first degree for each of the three people in the truck, e.g., Keeton, Corey, and Brian, and two armed criminal action counts that accompanied each assault charge.[3]  (Resp. Ex. 2 at 80-85, 88-93.)  He was sentenced as a prior offender to an aggregate term of 35 years imprisonment.  (Id. at 100-02.)

Petitioner appealed on three claims of trial court error.  (Resp. Ex. 3.)  The appellate court rejected each in an unpublished per curiam order:

> . . . On appeal Defendant contends there was no evidence that he drove his vehicle toward the three victims and there was insufficient evidence that he intended to kill or seriously injure any of the victims.  He further seeks plain error review of a claim that his conviction for six rather than three counts of first degree assault violated his right to be free from double jeopardy.
>
> . . . We find sufficient evidence from which a reasonable juror could have found Defendant guilty beyond a reasonable doubt.  No double-jeopardy violation occurred, as the record shows Defendant committed two separate sets of assaults on the victims. . . .

(Resp. Ex. 5) (Alterations added.)

Petitioner then timely moved pro se for post-conviction relief.  (Resp. Ex. 6 at 4-26.) He alleged in his first ground that his trial counsel was ineffective for failing to move for a dismissal of the charges based on exculpatory deposition testimony of Keeton that was inconsistent with his testimony at the preliminary hearing.  (Id. at 5-7.)  In another ground, Petitioner challenged his counsel's failure to show that the prosecutor had obtained perjured statements, as evidenced by the inconsistency between Keeton's deposition testimony and his statements as reported by police.  (Id. at 10-11, 13.)  Petitioner also alleged that the

_____

[3]Petitioner was acquitted on a first degree assault charge as to Diane Davis and the accompanying armed criminal action charge.

prosecutor had knowingly introduced perjured testimony by Davis and Brian that Petitioner had approached Brian and Corey when they were in the bed of the truck. (Id. at 18-21.)

The motion was amended by appointed counsel. (Id. at 29-47.) In addition to incorporating by reference the grounds raised in the pro se motion, the amended motion alleged that trial counsel was ineffective for failing to (1) introduce into evidence Keeton's statement to police officers, his preliminary hearing testimony, and his deposition testimony, (2) introduce at trial prior inconsistent statements of Davis, (3) introduce at trial prior inconsistent statements of Butler, and (4) submit instructions on assault third degree. (Id. at 34-47.)

The motion was denied without an evidentiary hearing. (Id. at 49-61.) The court found, in relevant part:

> In Point 1 of his amended motion and Point C of his pro se motion, Movant alleges that trial counsel was ineffective in failing to introduce at trial the police report, preliminary hearing testimony and/or deposition testimony of Marlon Keeton, who was deceased at the time of trial. Movant fails to allege in his motion that he was present at the deposition and had an opportunity to cross-examine Mr. Keeton, thus establishing that relevant portions of Mr. Keeton's deposition would have been admissible. Movant further fails to set forth in his motion what specific testimony from the deposition or the preliminary hearing he wished trial counsel to introduce, or how that specific testimony would have provided him with a viable defense. Thus, Movant's claims with regard to trial counsel's failure to introduce deposition testimony and preliminary hearing testimony of Marlon Keeton fail. Movant does set forth the material in the police report that he argues trial counsel should have introduced, however, to wit: "Keeton . . . stated to police that Movant remained in his car at the Amoco station and attempted to run into Corey and Brian, but Keeton grabbed them and pulled them out of the way." . . . Movant claims that this evidence: 1) would have refuted that of Diane Davis, who testified that Movant had exited his car, approached Ms. Davis' two boys as they stood in the bed of the pickup truck, and talked to them; and 2) would have supported the defense theory that

Movant did not see the boys in the back of the truck. Movant fails to establish how the police report would have been admissible evidence. An objection to this evidence would have certainly been sustained by this Court.

(Id. at 52-53.) (Alterations added.) The motion court also denied Petitioner's pro se claim of prosecutorial misconduct for introducing Davis' and Brian's allegedly perjured testimony, finding that Petitioner had failed to plead facts entitling him to relief or to show prejudice. (Id. at 59-60.)

Petitioner appealed on three grounds, the second of which was that the motion court erred when concluding that trial counsel was not ineffective for not introducing Keeton's prior inconsistent statements. (Id. at 63; Resp. Ex. 7.) The claim of prosecutorial misconduct was not raised on appeal. Addressing Petitioner's second ground, the appellate court found that Petitioner had fatally failed to identify how Keeton's statements would have provided him with a viable defense or created reasonable doubt of his guilt. (Id. at 4.) His appeal was denied. (Resp. Ex. 9.)

Petitioner now seeks federal habeas relief on claims that (1) trial counsel was ineffective for failing to introduce the prior deposition testimony of Keeton and (2) the prosecutor knowingly used false testimony at trial from Diane Davis and her son Brian.[4] Respondent contends that the first is without merit and the second procedurally barred by

_____

[4]Petitioner sought leave to amend his § 2254 petition to include all the grounds raised in his direct appeal and in his post-conviction appeal. This motion was filed after the one-year statute of limitations of 28 U.S.C. § 2244(d). Finding that the grounds sought to be included did not relate back to the original grounds, the undersigned denied Petitioner leave to amend. Petitioner did not appeal this Order to the District Court.

Petitioner's failure to raise it on appeal. Petitioner counters that any default should be excused by post-conviction counsel's conduct.

<u>**Discussion**</u>

<u>Standard of Review.</u> Title 28 U.S.C. § 2254(d) mandates that a federal court "not grant habeas relief on a claim that was adjudicated on the merits in state court unless 'it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999) (quoting § 2254(d)(1)), or it "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" **Evans v. Rogerson**, 223 F.3d 869, 871 (8th Cir. 2000) (quoting § 2254(d)(2)). <u>See</u> <u>also</u> **Weaver v. Bowersox**, 241 F.3d 1024, 1029 (8th Cir. 2001) ("Section 2254(d) distinguishes between two types of erroneous decisions – those of law and those of fact[.]").

The "contrary to" clause and the "unreasonable application" clause have independent meanings. **Williams v. Taylor**, 529 U.S. 362, 405 (2000). "[A] state court decision is 'contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent.'" **Lockyer v. Andrade**, 538 U.S. 63, 73 (2003) (quoting <u>Williams</u>, 529 U.S. at 405-06) (alterations added). "On the other hand, a run-of-the-mill state-court decision applying the

correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." **Williams**, 529 U.S. at 406 (alteration added). Thus, a state court decision that correctly identifies the controlling legal authority and, applying that authority, rejects a prisoner's claim does not fit within the "contrary to" clause although it might be contrary to a federal court's conception of how that authority ought to be applied in that particular case. **Id.**

Such a state court decision can, however, fit within the "unreasonable application" clause. **Id.** at 407-08. "[W]hen a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause." **Id.** at 409 (alterations added). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." **Id.** (alteration added). When making this inquiry, a federal habeas court should note that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." **Id.** at 410. "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." **Lockyer**, 538 U.S. at 75 (internal quotations omitted). And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'" **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting Long v. Humphrey, 184 F.3d 758, 761 (8th Cir. 1999))

(alterations in original). Additionally, "the [state courts'] 'summary nature' of the discussion of [a] federal constitutional question does not preclude application of the AEDPA standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (alterations added).

Ineffective Assistance of Trial Counsel. Petitioner first claims that his trial counsel was ineffective for failing to introduce the prior deposition testimony of Keeton, testimony that conflicted with the sequence of events described by Davis and Butler.

"The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting Kimmelman v. Morrison, 477 U.S. 365, 374 (1986)). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir. 1999)) (first alteration added; second in original). "Only reasonable competence, the sort expected of the ordinary fallible lawyer, is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (internal quotations omitted). Moreover, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001) (alteration added).

To establish that counsel's lack of competence violated the Sixth Amendment, the petitioner must show that counsel's performance was deficient and prejudicial. **Kellogg**,

176 F.3d at 452. To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 971 (8th Cir. 1999) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Id.** (quoting Strickland, 466 U.S. at 697). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694). "'In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" **Lawrence v. Armontrout**, 31 F.3d 662, 666 (8th Cir. 1994) (quoting Strickland, 466 U.S. at 695). The burden of showing a reasonable probability is the petitioner's. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Hoon v. Iowa**, 313 F.3d 1058, 1061 (8th Cir. 2002); **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001). Thus, if a petitioner has failed to show that, but for an allegedly deficient performance by his trial counsel, there is a reasonable probability that the outcome of his trial would have been different, his claim of ineffective assistance of counsel fails.

Petitioner contends that his trial counsel was ineffective for failing to introduce prior statements or testimony by Keeton that would have supported Petitioner's defense that he did not know the boys were in the truck. Assuming, without deciding, that this evidence would have been admissible and that trial counsel's performance was deficient for failing to introduce it, Petitioner's claim must nonetheless fail because he cannot show prejudice.

A bystander testified that she saw the boys fly up and down in the back of the truck as she followed the chase from a distance of two to three car lengths. She also testified that she saw Petitioner try to kick one of the boys. The police officer testified that Petitioner threatened the boys. Moreover, any exculpatory effect of Keeton's testimony would have been weakened by testimony by Davis that Keeton was not feeling well that night and by testimony from Corey and Brian that Petitioner did approach them. Petitioner himself noted that Keeton's recollection at the preliminary hearing was different than at his deposition. Accordingly, the appellate court's rejection of this claim is not an unreasonable application of or contrary to clearly established Federal law, nor did it result in an unreasonable determination based on the facts before it. See **Osborne v. Purkett**, 411 F.3d 911, 918 (8th Cir. 2005) (finding no prejudice in case in which appellate court found that, based on strength of admitted evidence, defendant would likely have been convicted even had omitted testimony been introduced); **Hall v. Luebbers**, 296 F.3d 685, 696 (8th Cir. 2002) (rejecting claim that counsel was ineffective for failing to impeach witness with inconsistencies in police report); **Tokar v. Armontrout**, 198 F.3d 1039, 1049 (8th Cir. 1999) (rejecting claim of ineffective assistance of counsel based on counsel's failure to

produce at trial testimony inconsistent with that of two of State's witnesses; petitioner had failed to show prejudice because even had testimony, addressing time necessary to get to victim's house from defendant's last location, been introduced, overwhelming evidence of two eyewitnesses placed defendant at murder scene); **Payne v. United States**, 78 F.3d 343, 348 (8th Cir. 1996) (rejecting ineffective assistance claim where, even if counsel's performance was deficient for failing to interview or investigate witnesses, defendant had failed to establish that doing so would have changed trial's outcome).

Prosecutorial Misconduct. Petitioner next claims that the prosecutor knowingly used perjured testimony[5] by Davis and Brian that Petitioner approached Brian and his brother when they were in the cab of the truck and mumbled something to them. This claim was not raised on appeal from the denial of Petitioner's post-conviction motion.

Title 28 U.S.C. § 2254(b)(1)(A) and the Supreme Court bar the granting of habeas corpus relief unless it appears that the state prisoner has exhausted available state court remedies. See **Baldwin v. Reese**, 541 U.S. 27, 27 (2004); **Gray v. Netherland**, 518 U.S. 152, 161 (1996); **Coleman v. Thompson**, 501 U.S. 722, 730 (1991). "'Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty

_____

[5]The undersigned notes that Petitioner has failed to show that the testimony was perjured.

with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Dan v. Burford, 339 U.S. 200, 204 (1950))." **Id.** at 731 (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)).  See also **Weeks v. Bowersox**, 119 F.3d 1342, 1349-50 (8th Cir. 1997) ("Requiring the exhaustion of state remedies both allows the states to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual record should the matter proceed to federal court.").

It is undisputed that Petitioner did not present this second claim in the appeal from the denial of his Rule 29.15 motion, see Mo.S.Ct.R. 29.15(a) (requiring claims of ineffective assistance of trial and appellate counsel to be raised in Rule 29.15 motion), and that there is no other available state remedy for him to now present them, see Mo.S.Ct.R. 29.15(l) (forbidding circuit courts from entertaining successive Rule 29.15 motions).

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."  **Coleman**, 501 U.S. at 732 (alteration added).  Thus, Petitioner has met the technical requirement for exhaustion of this claim.

In order to preclude habeas petitioners from avoiding the exhaustion requirement and to "ensure[] that the States' interest in correcting their own mistakes is respected in all federal habeas cases," **id.** (alteration added), the state procedural bar that gives rise to a

habeas petitioner having technically satisfied the exhaustion requirement provides an independent and adequate state-law ground for the petitioner's conviction, **id.** at 730; **Gray**, 518 U.S. at 162. This independent and adequate state law ground prevents federal habeas review of a defaulted claim "unless [the petitioner] can show cause and prejudice for the default, or actual innocence." **Clemons v. Luebbers**, 381 F.3d 744, 750 (8th Cir. 2004) (alteration added). The failure to include specific claims in the appeal from the denial of a Rule 29.15 motion results in those claims being procedurally barred. See **Osborne**, 411 F.3d at 919.

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Ervin v. Delo**, 194 F.3d 908, 915 (8th Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration in original). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). "At a minimum, however, [Petitioner] must show that 'something *external* to [him], something that cannot fairly be attributed to him,' caused the procedural default." **Id.** (quoting Coleman, 501 U.S. at 753) (first alteration added; second in original).

Petitioner argues that the failure of post-conviction counsel to raise this claim is cause for the resulting procedural default. The alleged ineffectiveness of state post-conviction counsel cannot, however, supply the required cause to excuse a procedural default. **Taylor v. Bowersox**, 329 F.3d 963, 971 n.13 (8th Cir. 2003); **Burns v. Gammon**, 173 F.3d 1089,

1092 (8th Cir. 1999); **Malone v. Vasquez**, 138 F.3d 711, 719 (8th Cir. 1998). Petitioner attempts to evade this holding by contending that the default was caused by post-conviction counsel's failure to specifically repeat the grounds raised in the pro se motion in the amended motion; thus, counsel effectively abandoned Petitioner. This contention is unavailing. The motion court did reach the merits of the grounds raised in the pro se motion, including those that were raised in the pro se motion and only incorporated by reference in the amended motion.[6] Quite simply, appellate counsel failed to raise the claim of prosecutorial misconduct on appeal and this failure is not cause for the resulting default.

The merits of a procedurally defaulted claim may be reached if actual innocence is established. See **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). To do so, a petitioner "must come forward with new reliable evidence that was not available at trial[.]" **Nance v. Norris**, 392 F.3d 284, 291 (8th Cir. 2004) (alteration added). Petitioner has come forwarded with repeated arguments, but no new evidence. His second claim is procedurally barred.

## Conclusion

For the foregoing reasons, Petitioner's first ground for habeas relief is without merit and his second, and last, ground is procedurally barred. Accordingly,

---

[6]As noted by Petitioner, Rule 29.15(g) specifically prohibits an amended motion from incorporating by reference the grounds raised in the seminal, pro se motion. Regardless, the motion court did address both the grounds raised in the amended motion and those raised in the pro se motion.

**IT IS HEREBY ORDERED** that the Attorney General of Missouri, Jeremiah W. Nixon, is added as a Respondent.

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Robert L. Trotter be **DENIED** without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Recommendation and the Memorandum incorporated herein pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact. See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of December, 2005.